■ In the Matter of Town of Charleston et al., Appellants, v Montgomery, Otsego, Schoharie Solid Waste Management Authority, Respondent. [651 NYS2d 708] —Carpinello, J. Appeals from a judgment and an amended judgment of the Supreme Court (Hughes, J.), entered November 8, 1995 and December 22, 1995 in Schoharie County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent selecting and maintaining a preferred solid waste landfill site.

Respondent is a public authority responsible for developing a

---

* Although plaintiff also filed a notice of appeal, he apparently has abandoned his appeal from Supreme Court's order.

regional municipal solid waste plan to address the waste disposal needs of Montgomery, Otsego and Schoharie Counties. In 1988 respondent prepared a solid waste management plan (hereinafter the Plan), which was approved by the Department of Environmental Conservation (hereinafter DEC) in 1992. The Plan called for the construction of a regional solid waste landfill. Respondent prepared a "landfill siting schedule", which provided for a multi-phased site selection and identification process that was expected to be completed in the spring of 1993. The level of analysis of each prospective site was to become progressively more detailed as the number of potential sites narrowed, culminating in the selection of a single site that exhibited the most promising characteristics for a solid waste landfill.

An interim siting report identified 14 potential sites and, following preliminary site evaluations, three areas with the highest scores were identified. In April 1993, a final site selection report chose Site G, located within the Town of Charleston, Montgomery County, as the primary site. The report noted that "[o]f the three primary sites investigated, the composite evaluation of all factors—hydrogeological, environmental and engineering considerations—indicated this site as being the most favorable".

Thereafter, respondent designated itself as the lead agency for purposes of review under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA). Respondent made a determination of environmental significance and directed the preparation of a draft environmental impact statement (hereinafter DEIS). Respondent declared the DEIS complete on January 19, 1994 and a public hearing was held during the DEIS comment period. In response to comments on the DEIS, respondent arranged a field investigation of the site by DEC to determine whether a certain wetland identified by petitioners' technical expert was in fact State regulated pursuant to the Environmental Conservation Law. Although DEC concluded that a State-regulated wetland was indeed located on Site G, respondent nonetheless maintained Site G as its primary site and a final environmental impact statement was accepted on January 31, 1995. A SEQRA findings statement was then prepared which authorized respondent to apply to DEC for a permit to construct and operate the proposed landfill.

Petitioners thereafter commenced the instant CPLR article 78 proceeding, challenging respondent's selection of Site G and its adherence to that selection after learning that a State-regulated wetland was located within its boundaries. Petition-

ers also claim that respondent failed to comply with SEQRA in conducting its environmental review. Supreme Court dismissed the petition. Petitioners appeal.

Petitioners maintain that Site G should have lost its status as the "primary" site after it was discovered that State-regulated wetlands were located on the site and that shallow groundwater was located between 2 and 20 feet below the surface and that the upper 30 feet of soil could be considered saturated. An agency's assessment of a project's environmental impact will be set aside only if it is affected by an error of law, is arbitrary and capricious, or constitutes an abuse of discretion (*see, Matter of Town of Dryden v Tompkins County Bd. of Representatives*, 78 NY2d 331, 333; *Akpan v Koch*, 75 NY2d 561, 570). "[A]gencies have considerable latitude evaluating environmental effects and choosing between alternative measures" (*Akpan v Koch, supra*, at 570).

The site review here became more stringent as the list of prospective sites narrowed. It is clear from the record that in adhering to its selection of Site G, respondent fully investigated the concerns expressed by petitioners but determined that Site G nonetheless remained the most desirable site. The final site selection criteria identified homogenous low permeable clay and bedrock of relatively low permeability as desirable characteristics. In the SEQRA findings statement, respondent noted that Site G had low permeable soils and bedrock and uniform soil characteristics.

Although wetlands were located on the site, as they were on each of the other two prospective sites, they were located primarily in drainage swales and stream courses that would be avoided during landfill construction. By contrast, Site F contained a considerable number of Federally regulated wetlands and it was feared that a landfill could not be configured so as to avoid triggering Federal regulation. Site B, the other prospective site, was shown to be too hydrogeologically complex to support landfill development. Site B's proximity to the Mohawk River was identified as a special problem that could require additional monitoring and remediation of the site. Finally, as to the size of the landfill's "footprint," which is approximately 20 acres instead of the 65 acres originally discussed, respondent took into account the decrease in solid waste production as the result of local recycling.

In conclusion, we disagree with petitioners that the selection criteria were so rigid as to require the process to begin from scratch once Site G was found to possess characteristics that were not wholly consistent with those criteria. Such a finding

would render the selection process virtually endless and enormously expensive. More importantly, the record makes it clear that respondent contemplated that each site would possess different attributes and that a careful weighing of those attributes would lead to a selection of the most appropriate site. Consequently, we reject petitioners' argument that respondent ignored its own siting criteria and that its adherence to its selection of Site G was arbitrary and capricious, an abuse of discretion or an error of law.

Similarly, we find that respondent took the requisite " 'hard look' " at the project's environmental impacts and gave a " 'reasoned elaboration' " of the basis for its determination (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417; *Aldrich v Pattison*, 107 AD2d 258, 265; *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232). It is not the role of this Court "to weigh the desirability of any proposed action or to choose among alternatives and procedural requirements of SEQRA and the regulations implementing it" (*Matter of WEOK Broadcasting Corp. v Planning Bd.*, 79 NY2d 373, 383). As previously noted, we believe that respondent fully considered the environmental impact of the depth of the groundwater on the site but took special note of the soil's low permeability in selecting Site G. Further, we agree with Supreme Court that the use of Green Road as an access route was addressed in the course of the review process and that the decision to use this road instead of a more traveled State road does not require the preparation of a supplemental environmental impact statement (*see, Matter of Bronfman v Flacke*, 127 AD2d 833, 836, *lv denied* 70 NY2d 601).

Cardona, P. J., Mercure, Casey and Spain, JJ., concur. Ordered that the judgment and amended judgment are affirmed, without costs.