■ In the Matter of REGIONAL ACTION GROUP FOR THE ENVIRONMENT, INC., Appellant, v MICHAEL ZAGATA, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents. (And Another Related Proceeding.) [666 NYS2d 307] —Mikoll, J. P. Appeal from a judgment of the Supreme Court (Cobb, J.), entered May 27, 1997 in Albany County, which dismissed petitioners' applications, in two proceedings pursuant to CPLR article 78 to, *inter alia*, review a determination of respondent Department of Environmental Conservation issuing a mining permit to respondent Azko Nobel Salt, Inc.

In November 1994, respondent Azko Nobel Salt Inc. (hereinafter ANSI) submitted a preliminary mining permit application to respondent Department of Environmental Conservation (hereinafter DEC). ANSI sought to establish and operate a new underground salt mine and accessory facilities on a 186-acre parcel of land which it owned on Hampton Corners in the Towns of Groveland and Geneseo in Livingston County. ANSI and its predecessors had formerly operated an underground salt mine in the Town of Retsoff, Livingston County, for over 100 years until flooding and a roof failure forced its closing in March 1994.

Following receipt of the application, DEC determined that the proposed project was a type I action under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), designated itself as the lead agency for review thereunder, made a determination of environmental significance requiring the preparation of a draft environmental impact statement (hereinafter DEIS), developed a proposed SEQRA

scoping outline and held public meetings to solicit public comment on potential environmental issues. Thereafter, on February 22, 1995, DEC issued a final SEQRA scoping outline to guide ANSI's preparation of a DEIS.

Following submission by ANSI of its completed applications and DEIS, DEC and its staff of experts (in the fields of mining, geology, hydrogeology, water quality and stream bed protection) reviewed these submissions and retained independent underground mining consultants to do likewise. After declaring the permit applications complete, DEC proposed draft permits and legislative public hearings on the DEIS and the draft permits were held in November 1995. Petitioners actively participated in these public hearings and submitted oral and written comments to DEC critical of the DEIS and draft permits.

Following the legislative public hearings, DEC conducted an issues conference for the purpose of ascertaining whether any "substantive and significant" factual issues required resolution at an adjudicatory hearing. Two Administrative Law Judges (hereinafter ALJs) presided over the issues conference, during the course of which DEC proposed revisions to the draft permits which incorporated or addressed some of the concerns of the public or other entities whose input was solicited. The eventual rulings of the ALJs recommended to DEC that an adjudicatory hearing be scheduled on four issues: (1) whether ANSI had adequately assessed groundwater resources to ensure protection of water supplies, (2) whether the mine design and details thereof sufficiently protected against subsidence resulting in damage to water supplies and property, (3) whether ANSI had sufficiently analyzed the effects of the life of the mine on the archaeological resources with a view to appropriate mitigation measures, and (4) whether there existed a viable alternative to the proposed rail spur, in the form of a pneumatic pipe system, so as to minimize and mitigate harm to agricultural lands.

The recommendations of the ALJs were appealed by all parties to respondent Commissioner of the Department of Environmental Conservation, who determined that petitioners failed to meet their burden under governing regulations (6 NYCRR 624.4 [c] [4]) to show that the issues identified by the ALJs were "substantive and significant" within the meaning of the cited regulation so as to mandate an adjudicatory hearing. The Commissioner then remanded the matter to DEC staff for completion of compliance with SEQRA and the issuance of the final permit, which occurred on March 22, 1996.

Petitioners contend on this appeal, as they did before Supreme Court, that the Commissioner acted arbitrarily and capriciously in finding that there were no issues requiring an adjudicatory hearing and that compliance with SEQRA had been established. Supreme Court dismissed both petitions, in a decision which scrupulously addressed each of the four issues which were recommended for adjudication by the ALJs and concluded that these four issues were not "substantive and significant" factual questions requiring a hearing, and consequently that the Commissioner's determination had a rational basis and was based upon a complete review of a well-developed record. We agree with the result and reasoning of Supreme Court, and affirm.

We specifically reiterate the clear principles of law applicable to the issue before us. An agency's assessment of the environmental impact of a project, and the consequent permit issuance, will not be disturbed unless it is predicated upon an error of law, is arbitrary or capricious, or represents an abuse of discretion (*see*, CPLR 7803 [3]; *Matter of Town of Dryden v Tompkins County Bd. of Representatives*, 78 NY2d 331, 333; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231; *Matter of Town of Charleston v Montgomery, Otsego, Schoharie Solid Waste Mgt. Auth.*, 235 AD2d 608, *lv denied* 89 NY2d 812). It is likewise settled that a court may not substitute its judgment for that of the agency responsible for making the determination. Rather, our inquiry is whether there is a rational basis for the decision or whether it is arbitrary and capricious. "Moreover, where, as here, the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference" (*Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363). That the factual evaluations involved in the Commissioner's determination required highly technical and specialized expertise in the various scientific fields noted above is abundantly clear from this voluminous record.

Our review of the Commissioner's interim decision leads us to the same conclusion as Supreme Court: that the Commissioner applied the appropriate standard and burden of proof in determining whether a hearing was warranted, and his determination that petitioners failed to make the requisite showing was neither arbitrary nor capricious. Moreover, his interim decision sets forth, as required, the reasons for his determination and provides findings of fact sufficient for judicial review.

Petitioners' other contentions are similarly without merit. The argument that the Commissioner's decision declining to

conduct an adjudicatory hearing constituted a de facto final decision to issue the permits prior to completion of the final SEQRA findings is unsupported by the record, which clearly indicates that the Commissioner remanded the matter for further compliance with SEQRA. Petitioners' segmentation argument fails both by virtue of incorrect factual assertions and reliance on obsolete provisions of DEC's regulations. The generalized contention that the final environmental impact study failed to satisfy the "rule of reason" by adequately addressing several potential environmental impacts is unsupported by any specific, articulated deficiencies in analysis. To the contrary, we view DEC's SEQRA findings as presenting a detailed comprehensive analysis of environmental impacts upon groundwater, air pollution, subsidence, archeology, agriculture and the character of the community, followed by the conclusion that there would be no adverse impact thereon as a result of the mine construction or operation, sufficient to satisfy the "rule of reason".

We reject petitioners' argument that ANSI abandoned the mine project and consequently the permit should be revoked. The record does not support a finding that mining, within the meaning of ECL 23-2705 (8), had commenced. Transferability of permits is expressly permitted by ECL 23-2711.

Finally, Supreme Court properly denied petitioners' motion to supplement the administrative record. Judicial review of administrative action must be conducted on the record as it existed before the agency when the determination was made (see, Matter of Raqiyb v Coughlin, 214 AD2d 788, lv denied 86 NY2d 702; Matter of Celestial Food Corp. v New York State Liq. Auth., 99 AD2d 25). Moreover, petitioners failed to exhaust their administrative remedies in this regard.

Crew III, Casey, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.