[669 NYS2d 674]

In the Matter of WEST VILLAGE COMMITTEE, INC., et al., Respondents-Appellants, v MICHAEL D. ZAGATA, as Commissioner of the New York State Department of Environmental Conservation, et al., Appellants-Respondents.

Third Department, February 19, 1998

92

APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany (*James M. Tierney* of counsel), for appellants-respondents.

*John W. Caffry,* Glens Falls, for respondents-appellants.

**OPINION OF THE COURT**

WHITE, J.

In 1975, the Legislature enacted the State Environmental

Quality Review Act (ECL art 8 [hereinafter SEQRA]), making environmental protection the mandate of every State and local agency (ECL 8-0103). At the heart of the SEQRA process is the environmental impact statement (hereinafter EIS) which must be prepared for any action that "may have a significant effect on the environment" (ECL 8-0109 [2]). The preparation of an EIS is governed by regulations adopted by respondent Department of Environmental Conservation (hereinafter DEC) (6 NYCRR part 617).[1] On September 20, 1995, DEC adopted amendments to 6 NYCRR part 617 that were intended to clarify and streamline the EIS process. Claiming that DEC has instead weakened dozens of SEQRA's substantive and procedural provisions, petitioners commenced this CPLR article 78 proceeding setting forth 15 causes of action seeking to annul a number of the amendments. Supreme Court dismissed all of the causes of action except one and parts of two others.[2] Both parties appeal.

When an administrative agency exercises its rule-making powers, it is accorded a high degree of judicial deference provided it acts within its statutory powers and the rule or regulation has a rational basis (see, Matter of Consolation Nursing Home v Commissioner of N. Y. State Dept. of Health, 85 NY2d 326, 331; Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 396; Matter of Beer Garden v New York State Liq. Auth., 79 NY2d 266, 276). Thus, to establish their causes of action, petitioners were required to show that DEC either exceeded its statutory authority or that the challenged regulations were so lacking in reason that they are essentially arbitrary (see, Ostrer v Schenck, 41 NY2d 782, 786). Our analysis shows that they failed to do so and, therefore, we conclude that Supreme Court erred in not dismissing the petition in its entirety.

Although not required by SEQRA, DEC's regulations have recognized that lead agencies or project sponsors may engage in scoping[3] prior to the preparation of a draft EIS (6 NYCRR former 617.7). The new regulations resulted in substantial

---

1. For a further description of the EIS process, see Matter of Jackson v New York State Urban Dev. Corp. (67 NY2d 400, 415-416).

2. The petition also contained a cause of action seeking legal fees that was dismissed and is not an issue on this appeal.

3. "Scoping" means the process by which the lead agency identifies the potentially significant adverse impacts related to the proposed action that are to be addressed in the draft EIS including the content and level of detail of the analysis, the range of alternatives, the mitigation measures needed and the identification of nonrelevant issues (6 NYCRR 617.2 [af]).

changes in the procedures governing scoping in that they now provide, *inter alia*, that if scoping is initiated, the project sponsor must submit a draft scope containing certain required information and that, within 60 days of its submission, the lead agency must provide a final written scope to the project sponsor (6 NYCRR 617.8 [b], [f]). The regulations further provide that all relevant issues should be raised before the issuance of the final written scope and, if a person or agency raises issues after that time, the project sponsor may incorporate such information into the draft EIS at its discretion (6 NYCRR 617.8 [g], [h]). Any substantive information not incorporated into the draft EIS must be considered as public comment on the draft EIS (6 NYCRR 617.8 [h]).

■ Petitioners claim these amendments run afoul of ECL 8-0109 (3)[4] as they allow a project sponsor to determine the content of a draft EIS thereby precluding a full assessment of the significant adverse environmental effects of a proposed project. We find this claim unpersuasive since the ultimate authority to determine whether a draft EIS is adequate with respect to its scope and content remains with the lead agency which, if it finds a draft EIS inadequate, may require a supplemental EIS (6 NYCRR 617.9 [a] [2], [7] [i]).

■ Petitioners also maintain that the limitation on postscoping suggestions is arbitrary since it is often difficult for the public and involved agencies to predict with accuracy the precise nature of a project's impact before a draft EIS has been prepared. DEC replies that the regulations do not prohibit the public from submitting additional issues after the preparation of the final written scope provided it establishes that such issues are relevant and significant (6 NYCRR 617.8 [g]). DEC points out that under the former regulations project sponsors were disinclined to participate in scoping since, without a time limitation, there was no definite end to the process resulting in delays in the preparation of the draft EIS and the inclusion of material in draft EISs that was not critical to the assessment of a project's environmental impacts. In view of these circumstances, we cannot say that the challenged regulations lack a rational basis particularly since scoping is a voluntary procedure in which DEC is encouraging participation by project sponsors.

---

4. In pertinent part, ECL 8-0109 (3) provides that "[n]otwithstanding any use of outside resources or work, agencies shall make their own independent judgment of the scope, contents and adequacy of an environmental impact statement".

■ Whereas the prior scoping regulations did not provide for public participation, lead agencies must now provide a period of time for public review and comment on a draft scope (6 NYCRR 617.8 [e]). They must also make a copy of the draft scope available to any person or interested agency that expressed an interest in writing (6 NYCRR 617.8 [b]). In our view these regulations comport with DEC's statutory obligation to adopt regulations that assure effective participation by the public (ECL 8-0113 [2] [i]).

■ Petitioners fault the scoping regulations for their failure to establish a minimum time frame for public participation and to require any public notice that scoping is occurring. DEC explains that it did not establish a specific time frame for public comment since it wanted to provide lead agencies with the greatest amount of administrative flexibility possible consistent with their statutory obligation to provide reasonable and meaningful opportunity for public comment. On the issue of notice, DEC pointed out that the regulations now require that a positive declaration be published in the Environmental Notice Bulletin and state if scoping will be conducted (6 NYCRR 617.12 [a] [2] [ii]; [c]). Additional notice is provided by the circulation of the draft scope which DEC's experience has shown is the most effective way of obtaining public comment. Moreover, these procedures for giving notice are not exclusive since a lead agency, in its discretion, may use other methods of providing notice like posting notices or media advertisements (6 NYCRR 617.12 [c] [3]). Arguably, DEC could have established other means of providing for adequate time for public comment and notice; however, we may not substitute our judgment for theirs (see, Matter of Chemical Specialties Mfrs. Assn. v Jorling, supra, at 396). Therefore, in the absence of evidentiary proof demonstrating that the means chosen by DEC are inadequate, we cannot say the regulations lack a rational basis.

■ The new regulations have also resulted in an expansion of the type II actions list which sets forth actions that do not require an EIS because DEC has determined that they do not have a significant effect on the environment or are otherwise precluded from environmental review (ECL 8-0113 [2] [c] [ii]; 6 NYCRR 617.5). DEC's inclusion of the actions of the Governor (6 NYCRR 617.5 [c] [37]) has drawn opposition from petitioners who maintain that he should not be exempt from SEQRA. Reference to the statute does not resolve this issue since its definition of "agency" does not include or exclude the Governor. In interpreting the Administrative Procedure Act ([hereinafter

APA] 5 USC § 701 *et seq.*), in which the definition of "agency" does not explicitly exclude or include the President, the United States Supreme Court found that, out of respect for the separation of powers and the unique constitutional position of the President, the textual silence is not enough to subject the President to the provisions of the APA (*see, Franklin v Massachusetts*, 505 US 788, 800-801). Instead, the Court required an express statement by Congress before assuming that it intended the President to be subject to the APA (*see, id.*, at 801). For the same reasons it has been held that the President is not subject to the impact statement requirements of the National Environmental Policy Act upon which SEQRA was patterned (*see, State of Alaska v Carter*, 462 F Supp 1155, 1160; *Williamsburg Around the Bridge Block Assn. v Giuliani*, 223 AD2d 64, 69, n 2).

We believe the same reasoning applies with equal force to the constitutional office of Governor and prevents us from lightly inferring a legislative intent to impose SEQRA's mandates upon such office. Accordingly, we find that DEC's promulgation of 6 NYCRR 617.5 (c) (37) is not in derogation of SEQRA. In any event, petitioners' argument appears to be more of an intellectual one than a practical one, for as one commentator has noted, virtually any conceivable act of the Governor would have to be executed by a State agency and thus fall within SEQRA (Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 8-0105, at 103).

■ Besides including the actions of the Governor in the type II list, DEC added a number of other actions[5] with which petitioners take issue. When DEC adds an action to the type II list, it must make a finding that the inclusion of such action will not have a significant effect on the environment (ECL 8-0113 [2] [c] [ii]). Our assessment as to whether DEC complied with this statute must be viewed in the context of the "rule of reason", which means that not every conceivable environmental impact, mitigating measure or alternative must have been addressed by DEC in order to have met its responsibility to take a " 'hard look' " at the relevant areas of environmental concern and make a reasoned elaboration of the basis for its determination (*Matter of Neville v Koch*, 79 NY2d 416, 425).

---

**5.** These actions are commercial structures up to 4,000 square feet; school building expansions up to 10,000 square feet; one to three-family residences in approved subdivisions; accessory structures; all area variances for one to three-family residences; forest management practices on less than 10 acres of land; and the interpretation of existing codes, rules or regulations (6 NYCRR 617.5 [c] [7], [8], [9], [10], [13], [14], [31]).

Our examination of DEC's final generic EIS discloses that it separately discussed each proposed addition to the type II list, identified the primary impacts such addition would have on the environment, explained why they were not significant and addressed the comments submitted during the SEQRA process. Inasmuch as petitioners have not come forward with evidentiary proof establishing that DEC's analysis is founded upon spurious data or is otherwise deficient, we shall defer to DEC's expertise (*see, Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.*, 85 NY2d 480, 485). Accordingly, we find that DEC fulfilled its responsibilities under SEQRA and thereby conclude that there is no reason to set aside the additions to the type II list since DEC's action is not affected by an error of law, is not arbitrary or capricious and does not constitute an abuse of discretion given the considerable latitude agencies have in evaluating the environmental effects of a proposed action (*see, Matter of Town of Charleston v Montgomery, Otsego, Schoharie Solid Waste Mgt. Auth.*, 235 AD2d 608, 610, *lv denied* 89 NY2d 812).

Petitioners next argue that 6 NYCRR 617.8 (a) and (f) (2) and 617.9 (b) (2) and (5) (iii) contravene ECL 8-0109 (2) and (8) in that they limit SEQRA review to only "significant" adverse environmental effects. Secondly, they contend that the effect of these regulations is to preclude lead agencies from requiring the assessments of impacts which individually are not significant but collectively are.

■ Our analysis does not comport with petitioners as it is well established that the purpose of an EIS is to examine the identified potentially significant environmental impacts which may result from a project, not every conceivable impact (*see, Matter of Merson v McNally*, 90 NY2d 742). Further, we do not read the cited regulations as restrictively as petitioners since changes in two or more elements of the environment, no one of which has a significant impact on the environment but when considered together result in a substantial adverse impact on the environment, is still one of the criteria for determining significance (*see*, 6 NYCRR 617.7 [c] [1] [xi]; *see also*, 6 NYCRR 617.7 [c] [1] [xii]).

■ ■ Petitioners' remaining contentions do not require extended discussion. There has been no improper delegation of responsibility to project sponsors for the preparation of the final EIS (*see*, 6 NYCRR 617.9 [b] [8]). Petitioners' argument that DEC should have assessed the cumulative impacts the new regulations will have on New York's waterways lacks

merit since their contention that the regulations are part of a pattern of action by DEC and other agencies to weaken the regulations and programs protecting New York's waterways does not have evidentiary support. We have examined petitioners' remaining contentions and find them unpersuasive.

CARDONA, P. J., MERCURE, SPAIN and CARPINELLO, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted the petition; dismiss those portions of the petition; and, as so modified, affirmed.