*903 OPINION OF THE COURT
Thomas D. Buchanan, J.
Petitioners/plaintiffs (for ease of reference, hereinafter petitioners) have brought this combined CPLR article 78 proceeding and declaratory judgment action to challenge the issuance of a temporary revocable permit (TRP) allowing defendant/respondent NYCO Minerals, Inc. (NYCO) to conduct mineral sampling on a 200-acre parcel of property lying within the Jay Mountain Wilderness Area and the Adirondack Forest Preserve, known as lot 8. The antecedent to the issuance of the TRP was passage of Proposal Number 5 (Prop 5), which was placed on the ballot for the November 2013 election after being passed by both houses of the legislature in 2012 and 2013 as required by the New York Constitution (NY Const, art XIX, § 1). The effect of Prop 5 was to amend New York Constitution, article XIV[ § 1, known as the “Forever Wild” provision. Following the passage of Prop 5, defendants/respondents Adirondack Park Agency (APA) and Department of Environmental Conservation (DEC) took several steps, including amendment of the Jay Mountain Wilderness Unit Management Plan (UMP), a State Environmental Quality Review Act (ECL art 8 [SEQRA]) review, and ultimately, the issuance of the TRP All of those actions are challenged here by petitioners.
The prayer for relief in the verified petition and complaint seeks judgment declaring the actions of APA and DEC to be “unlawful, null, void, and of no effect,” as well as injunctive relief preventing the agencies from implementing or enforcing the various steps they took and preventing NYCO from taking any action related to mineral sampling on lot 8. Six causes of action/claims are presented, but they rest on four legal arguments, which coordinate with permissible “questions raised” under article 78 (CPLR 7803).
Abrogation and Implied Repeal
One core point of argument between the parties bears addressing at the outset, as it affects the majority of the points being made on both sides. Petitioners take issue with DEC’s response to public comments received on the proposed amendment to the UMI) taking a position which respondents continue to advance in this proceeding. Respondents argue that by amending the New York Constitution, Prop 5 operated to abrogate existing prohibitions on mineral sampling in the Adirondack Park Agency Act (Executive Law art 27 [APA Act]), the Environmental Conservation Law and the State Land Manage *904 ment Plan (SLMP). Respondents contend, however, that only those specific provisions which prohibit mineral sampling in the Forest Preserve are abrogated, leaving the remainder intact.
Petitioners make two alternative arguments against this position, which distill to a single proposition: either Prop 5 abrogates the relevant statutes in their entirety or it abrogates nothing at all. On one hand, petitioners argue in their memorandum of law that if, as respondents assert, Prop 5 abrogates a statute, “the entire statute is nullified, equally and permanently as to all affected entities.” From this premise, petitioners argue that the Environmental Conservation Law and the Adirondack Park Agency Act would be completely stripped away, leaving DEC and APA without jurisdictional bases for their actions. Petitioners also argue that abrogation deprives the agencies of statutory guidelines for their actions, rendering the amendment of the UMP and the concomitant issuance of the TRP to NYCO arbitrary and capricious. On the other hand, petitioners argue that existing legislation was not actually abrogated, because it could be harmonized with Prop 5 if DEC simply denied a permit to NYCO. Therefore, the grant of the TRP was in violation of existing prohibitions and thus affected by an error of law.
It is perhaps worth noting that two distinct terms have been used by the parties. One term is “abrogation” and the other is “implied repeal.” The cases cited by the parties, as well as others consulted by the court, use the term “abrogation” in the context of a conflict between a constitutional provision and a statute, while “implied repeal” refers to the effect of new legislation on existing statutes. Leaving aside any analytical distinctions between constitutional abrogation and implied repeal by later legislation, however, case law supports respondents’ theory.
Petitioners cite Durante v Evans (94 AD2d 141 [3d Dept 1983]) as dictating complete abrogation. The Durante opinion, however, does not actually support petitioners’ argument. In that case, the Court held that constitutional amendments had given the power to appoint certain county officials to the Chief Administrative Judge of the Courts. The Court’s holding ends with this statement, “and we declare void those portions of sections 911 and 912 of the County Law which provide to the contrary” {id. at 146). The Durante court did not sweep away the entire County Law. Indeed, the language used actually left room for portions of the individual sections cited to remain viable. Likewise, in a foundational case cited in Durante (Sommer & *905 Bro. v Lorsch & Co., 254 NY 146 [1930]), the Court of Appeals held that a single clause from one subdivision of one section of a statute was abrogated.
Case law also instructs that abrogation should not be lightly-found. Four principles from cases cited by the parties appear to this court to work in concert here. First, when construing Prop 5, the starting point is the language used in the amendment itself (People v Carroll, 3 NY2d 686 [1958]). Second, before abrogation is found, the constitutional provision and the particular statute at issue must be found to be so repugnant that they “cannot both stand or be reconciled in any reasonable way” (Amico v Erie County Legislature, 36 AD2d 415, 427 [4th Dept 1971] [citation omitted]). Third, a constitutional amendment “must be deemed to have been made in the light of and with consideration of existing legislation, and such legislation becomes operative in carrying out the constitutional provisions” (Matter of Uhlmann v Conway, 277 App Div 478, 481 [3d Dept 1950] [citations omitted]). Finally, “no part of the Constitution should be construed so as to defeat its purpose or the intent of the people adopting it” (Pfingst v State of New York, 57 AD2d 163, 165 [3d Dept 1977]).
Cases discussing implied repeal apply a parallel analysis. New York courts have consistently instructed that the implied repeal of a statute by later legislation is a result not favored in the law and should be avoided, if possible, by interpreting the statutes in a way that harmonizes them (see e.g. Matter of Town of N. Hempstead v County of Nassau, 24 NY3d 67 [2014]; Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp., 2 NY3d 524 [2004]; Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d 186 [1988]; Alweis v Evans, 69 NY2d 199 [1987]; Matter of Pharmaceutical Socy. of State of N.Y. v New York State Dept. of Social Servs., 223 AD2d 58 [3d Dept 1996]).
Applying these principles to the case at hand, petitioners’ all-or-nothing position is exposed as fallacy. Petitioners’ proposition that abrogation must be total is contrary to the rulings in the Durante and Sommer cases. Petitioners’ proposition that Prop 5 can be harmonized only by denying a permit to NYCO is contrary to the intent of those adopting Prop 5, as expressed in the language found on the face of the amendment. The language of Prop 5 is not arcane. The amendment states in a fairly straightforward manner that the State may authorize NYCO to conduct mineral sampling on lot 8. As a duly adopted provision *906 of the Constitution, Prop 5 has priority over statutory provisions and administrative policies that are repugnant to it. However, care must be taken to harmonize, rather than to void, either law or policy that is not repugnant to Prop 5. Therefore, insofar as the Adirondack Park Agency Act, the Environmental Conservation Law, the SLMP and the UMP specifically prohibit the State from authorizing NYCO to conduct mineral sampling on lot 8, those provisions are abrogated. All statutory provisions and administrative policies that do not specifically prohibit the State from authorizing NYCO to conduct mineral sampling on lot 8 are not abrogated. They continue in full force and effect and must be utilized by the State in carrying out its functions. With these conclusions in mind, the questions for consideration under article 78 will be examined in the order presented by petitioners.
1. Respondents have proceeded or are about to proceed in excess of their jurisdiction.
Petitioners start from the proposition that agencies of state government must act in accordance with their enabling statutes, a point that is not disputed by respondents and has been referred to by the Court of Appeals as “axiomatic” (Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation, 18 NY3d 289, 294-295 [2011]). Petitioners argue that respondents have acted in excess of their jurisdiction because the legislature has not enacted enabling legislation to permit the actions they have taken. Petitioners assert that enabling is necessary for two reasons. First, petitioners point out that neither respondents’ existing enabling statutes—the Adirondack Park Agency Act and the Environmental Conservation Law—nor the SLMP permit mineral sampling in the Forest Preserve. Second, they argue that Prop 5 is not self-executing.
The parties do not dispute that legislation in place prior to the passage of Prop 5 prohibited mineral sampling on lot 8. As the analysis above has shown, however, Prop 5 effected a slight, specific expansion of the jurisdiction of both the APA and DEC by allowing the State to authorize mineral sampling by NYCO on lot 8. Existing prohibitions against mineral sampling were abrogated to the extent that they prevented the State from authorizing NYCO to conduct mineral sampling on lot 8.
Evaluation of petitioners’ second point starts from the presumption that a constitutional amendment such as Prop 5 is self-executing (People v Carroll, 3 NY2d at 691). Petitioners cite *907 to the Carroll opinion, however, as providing three reasons why enabling legislation was required. Petitioners point out that the use of the word “may” in Prop 5 does not mandate that the State issue a TRP to NYCO, that Prop 5 does not “detail the method or procedures of implementation” and that the only way to effectuate Prop 5 in the context of existing legislation was for the State to deny a permit to NYCO.
The analysis set out at the beginning of this decision, order and judgment defeats petitioners’ contentions. All applicable statutes and administrative policies not abrogated by Prop 5 remained in force, imposing various duties on those agencies in connection with the management of the Forest Preserve, including lot 8. These included the preexisting method and procedures for issuing a TRP While there has been much argument by the parties over the meaning of “may” as being either mandatory or permissive, the court finds that assuming the Prop 5 directive to be permissive does not assist petitioners. From the record here, it is apparent that if DEC and APA had not fulfilled their preexisting duties through means such as conducting the SEQRA review and imposing conditions on the TRR including requirements for the work plan to be followed by NYCO, then the TRP would not have issued.
In sum, because the enabling legislation for DEC and APA was not completely abrogated, the agencies had jurisdiction to take the actions complained of here. Petitioners’ claims premised on a lack of jurisdiction must be dismissed.
2. Approvals of the UMP amendment and the TRP were arbitrary, capricious, and an abuse of discretion.
Petitioners assert that because any abrogation of law or policy effected by Prop 5 must have been complete, the agencies acted without any statutory or regulatory guidelines. Petitioners’ premise of total abrogation has been refuted, however, so that the conclusion they advance necessarily fails. Petitioners offer no other reasons for their characterization of the agencies’ actions as arbitrary, capricious or an abuse of discretion. Their claims based on this argument must be dismissed.
3. The agencies’ determinations were affected by an error of law.
Petitioners assert error of law based on the premise that none of the existing prohibitions against mineral sampling were actually abrogated by Prop 5 because existing law could be harmonized with Prop 5 by denying a permit to NYCO. The illogic of this argument has also been established. Petitioners’ solution is *908 not really “harmonizing” at all, in that it would defeat the plain meaning of Prop 5. The claims based on this argument must be dismissed.
4. DEC has failed to perform a duty enjoined upon it by law (SEQRA).
Petitioners allege that in performing a SEQRA review of NYCO’s proposed mineral sampling on lot 8, DEC either disregarded or did not take the required “hard look” at factors to be considered under a regulation promulgated pursuant to SEQRA (6 NYCRR 617.7). Respondents point out that actions approved or permitted by the APA are subject to environmental review under the APA Act rather than SEQRA, so that this claim, found in the petition/complaint as the seventh cause of action, fails to state a claim against DEC (Matter of Association for the Protection of the Adirondacks, Inc. v Town Bd. of Town of Tupper Lake, 64 AD3d 825 [3d Dept 2009]). Nonetheless, the record shows that a SEQRA review was conducted by DEC. Respondents assert that the review was adequate and resulted in a number of conditions in the TRP issued to NYCO.
A court reviewing a SEQRA determination is to determine whether the agency involved identified relevant areas of environmental concern, took a “hard look” at them and made a “reasoned elaboration” of the basis for its determination (Akpan v Koch, 75 NY2d 561, 570 [1990]). In doing so, the court may not substitute its own judgment for that of the agency (Matter of Regional Action Group for Envt. v Zagata, 245 AD2d 798 [3d Dept 1997]), but must instead decide whether the agency determination has a rational basis in the record (Matter of Hingston v New York State Dept. of Envtl. Conservation, 202 AD2d 877 [3d Dept 1994]). The agency’s determination will be overturned if it is arbitrary or capricious (Matter of Town of Amsterdam v Amsterdam Indus. Dev. Agency, 95 AD3d 1539 [3d Dept 2012]).
Petitioners list seven “indicators of significant adverse impacts on the environment” from 6 NYCRR 617.7, which they assert as being either completely ignored or undervalued in DEC’s SEQRA review. The court’s review of the record shows that all of these factors were indeed considered by DEC and that most resulted in conditions imposed in the final TRP That petitioners disagree with the level of scrutiny applied to particular factors is not determinative. “An agency’s compliance with its substantive SEQRA obligations is governed by a rule of reason and the extent to which particular environmental factors *909 are to be considered varies in accordance with the circumstances and nature of particular proposals” (Akpan v Koch, 75 NY2d at 570). On the record here, there was a rational basis for DEC’S determination that there would be no significant environmental impacts from NYCO’s mineral sampling on lot 8, if the sampling operation is conducted as required under the terms of the TRE Petitioners’ claim based on this argument must be dismissed, as well.
The parties’ remaining contentions have been considered, but do not alter the outcome here.
Therefore, in consideration of all the foregoing, it is hereby-ordered, adjudged and decreed, that the temporary restraining order issued by this court and entered by the clerk on July 14, 2014 is hereby dissolved, and the undertaking posted by petitioners is hereby discharged; and it is further ordered, adjudged and decreed, that the verified petition and complaint herein is hereby dismissed.