■ In the Matter of EUGENE VELTRI, Appellant, v NEW YORK STATE OFFICE OF THE STATE COMPTROLLER et al., Respondents.
[916 NYS2d 315]—

Peters, J. Appeal from a judgment of the Supreme Court (McDonough, J.), entered August 14, 2009 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of the New York State Environmental Protection and Spill Compensation Fund denying petitioner's application for damage compensation.

Petitioner owns real property in the City of Rochester, Monroe County, which he purchased from A.R. Gundry in 1989. In 1987 and 1988, Leaseway Transportation, Inc., which was leasing the property from Gundry and operating it as a trucking terminal, reported spills on the property to the Department of Environmental Conservation (hereinafter DEC). Following several excavations and the removal of contaminated soil and multiple underground storage tanks (hereinafter USTs), DEC issued a letter to Leaseway in September 1988 stating that its inspection of the area where the soil and USTs had been removed "reasonably suggest[ed] that the site is now free of the effects of underground fuel leakage," but cautioned that "[t]his does not preclude the migration of contaminants off property or to other sections of the property."

That same month, petitioner entered into a purchase and sale agreement with Gundry which required Gundry to remove all USTs from the property, with the exception of one 1,000-gallon heating oil UST, as well as any petroleum contaminated soil in the area of the USTs. After this work was undertaken by Leaseway pursuant to its lease with Gundry, petitioner purchased the property in an "as is" condition and operated it as a

precision molding facility until 2000. In 2005, in conjunction with a planned sale of the property, an environmental assessment was conducted. According to petitioner, the assessment revealed a 4,500-gallon UST (hereinafter orphan tank) that predated petitioner's purchase and contaminated soil and groundwater in the vicinity of the location of the former USTs.[1] The Monroe County Department of Health and DEC required that the orphan tank and contaminated soil be removed from the property, and petitioner complied.

Petitioner's application for reimbursement from the New York Environmental Protection and Spill Compensation Fund (hereinafter Fund) for damage to his real property, loss of income and legal costs was denied. The Fund ruled that, to the extent that petitioner claimed that the contamination was caused by the orphan tank discovered in 2005, petitioner was strictly liable as owner of the system from which the discharge occurred. Alternatively, the Fund found that, even if the contamination did not occur while petitioner was the owner, but was instead discharged from USTs that were removed prior to him taking title to the property, his claim for reimbursement was untimely. Petitioner thereafter commenced this CPLR article 78 proceeding seeking to annul the Fund's determination. Concluding that the Fund's determination was rational, Supreme Court dismissed the petition. Petitioner appeals.

Relying on *State of New York v Green* (96 NY2d 403 [2001]) and *State of New York v Speonk Fuel, Inc.* (3 NY3d 720 [2004]), petitioner argues that he cannot be liable for any contamination caused by the orphan tank because he had no knowledge of its existence when he purchased the property and therefore could not have controlled the events that led to the discharge. However, petitioner's liability as a discharger is not predicated on his status as a landowner but, rather, as the owner of the system from which the discharge occurred. "This [C]ourt has consistently construed Navigation Law § 181 (1) so as to impose liability on the owner of a system from which a discharge occurred in the absence of evidence that the owner caused or contributed to the discharge" (*Matter of White v Regan*, 171 AD2d 197, 199-200 [1991], *lv denied* 79 NY2d 754 [1992] [citations omitted]; *see Golovach v Bellmont L.M.*, 4 AD3d 730, 731 [2004], *lv dismissed* 2 NY3d 793 [2004]; *Matter of 310 S. Broadway Corp. v McCall*, 275 AD2d 549, 549 [2000], *lv denied*

---

1. Petitioner did not submit the environmental assessment report in his application to the New York Environmental Protection and Spill Compensation Fund. Consequently, there is nothing in the record indicating precisely where on the property the contaminated soil was discovered.

96 NY2d 701 [2001]; *State of New York v New York Cent. Mut. Fire Ins. Co.*, 147 AD2d 77, 79 [1989]).

Here, as in *Matter of White v Regan* (*supra*), petitioner claims that he "unwittingly took title to real property containing one . . . undisclosed underground petroleum storage tank[ ]" and was unaware of and did nothing to contribute to the contamination (*Matter of White v Regan*, 171 AD2d at 198-199). And, as with the petitioners in *White*, petitioner here was found to be strictly liable as the owner of the system at the time of discovery of the discharge, regardless of fault or knowledge (*see id.* at 199-201). Although petitioner contends that he does not, in fact, own the system from which the discharge occurred, in reviewing an administrative determination this Court " 'may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the [determination] or whether it is arbitrary and capricious' " (*Matter of 310 S. Broadway Corp. v McCall*, 275 AD2d at 550, quoting *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363 [1987]; *see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230-231 [1974]). Accordingly, the only issue to be resolved in this proceeding is whether there is a rational basis in the record for the determination that petitioner owned the orphan tank from which the discharge allegedly occurred.

While the orphan tank was installed by an entity other than petitioner and petitioner took steps in an attempt to remove all USTs from the property prior to purchasing it, it remains undisputed that the orphan tank remained in the ground when the property was purchased by petitioner. Having been imbedded into and affixed to the land, USTs are considered fixtures (*see Golovach v Bellmont L.M.*, 4 AD3d at 731; *Matter of 310 S. Broadway Corp. v McCall*, 275 AD2d at 550; *Sunnybrook Realty Co. v State of New York*, 15 Misc 2d 739, 741 [1959], *mod on other grounds* 11 AD2d 888 [1960], *affd* 9 NY2d 960 [1961]) which, upon conveyance of the land, generally become the property of the landowner (*see Mott v Palmer*, 1 NY 564, 569-570 [1848]; *230 Park Ave. Assoc. v Penn Cent. Corp.*, 178 AD2d 185, 186 [1991]). Here, petitioner purchased the property in "as is" condition and failed to submit any proof that the transfer of the land did not include fixtures, and the record is otherwise devoid of any evidence that, as the title owner of the real estate, petitioner is not the owner of the orphan tank (*see Matter of 310 S. Broadway Corp. v McCall*, 275 AD2d at 550; *see also State of New York v Dennin*, 17 AD3d 744, 745 [2005], *lv*

*dismissed* 5 NY3d 824 [2005]; *see e.g. Matter of White v Regan,* 171 AD2d at 199-201). Thus, the Fund could rationally conclude that petitioner owned the tank from which the discharge occurred (*see Matter of 310 S. Broadway Corp. v McCall,* 275 AD2d at 551; *see also Golovach v Bellmont L.M.,* 4 AD3d at 731). As such, even though petitioner was "unaware of and did nothing to contribute to the contamination," he is strictly liable as a discharger and not entitled to reimbursement from the Fund (*Matter of White v Regan,* 171 AD2d at 199; *see Matter of 310 S. Broadway Corp. v McCall,* 275 AD2d at 550).[2]

To the extent that petitioner argued at the administrative level that the contamination resulted from discharges from USTs that were removed before he purchased the property in 1989, the Fund correctly determined that petitioner's claim would be time-barred under this alternative scenario. Pursuant to the dual time requirements of Navigation Law § 182, all claims for reimbursement from the Fund must be filed "not later than three years after the date of discovery of damage nor later than ten years after the date of the incident which caused the damage" (*see Matter of Z & H Realty v Office of State Comptroller,* 259 AD2d 928, 930-931 [1999]). Here, since the USTs were removed from the property in 1988, any discharge from those tanks necessarily occurred prior to that time. Inasmuch as petitioner's claim for reimbursement was filed in June 2007, it was untimely as not filed within "ten years after the date of the incident which caused the damage" (Navigation Law § 182).

Finally, petitioner's arguments regarding the applicability of Navigation Law § 181 (4) and his entitlement to a hearing under Navigation Law § 185 were raised for the first time in this CPLR article 78 proceeding. As "judicial review of administrative action [is] limited to a consideration of the issues actually raised before the administrative agency making the determination," petitioner is precluded from raising these arguments (*Matter of Roggemann v Bane,* 223 AD2d 854, 856 [1996]; *see Matter of Peckham v Calogero,* 12 NY3d 424, 430 [2009]; *Matter of Erdheim v Travis,* 7 AD3d 876, 877 [2004]).

Mercure, J.P., Rose, Malone Jr. and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.

---

**2.** We note that a party found to be a discharger under the Navigation Law is not without a remedy, as he or she may bring an action against the prior owner based upon that party's liability as a discharger (*see White v Long,* 85 NY2d 564, 568 [1995]; *Matter of White v Regan,* 171 AD2d at 200).