Matter of Paladino v Board of Educ. for the City of Buffalo Pub. Sch. Dist. (2020 NY Slip Op 02835)





Matter of Paladino v Board of Educ. for the City of Buffalo Pub. Sch. Dist.


2020 NY Slip Op 02835


Decided on May 14, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 14, 2020

528214

[*1]In the Matter of Carl P. Paladino, Petitioner,
v
Board of Education for the City of Buffalo Public School District et al., Respondents.

Calendar Date: March 26, 2020

Before: Garry, P.J., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Lippes Mathias Wexler Friedman LLP, Buffalo (Dennis C. Vacco of counsel), for petitioner.
Law Firm of Frank W. Miller, East Syracuse (Charles C. Spagnoli of counsel), for Board of Education for the City of Buffalo Public School District and others, respondents.
Letitia James, Attorney General, Albany (Laura Etlinger of counsel), for MaryEllen Elia and another, respondents.



Pritzker, J.
(1) Combined proceeding pursuant to CPLR article 78 and action for declaratory judgment (transferred to this Court by order of the Supreme Court, entered in Albany County) to, among other things, review a determination of respondent Commissioner of Education removing petitioner from his position as a member of respondent Board of Education for the City of Buffalo Public School District, and (2) motion to supplement the record.
On December 23, 2016, a local Buffalo magazine entitled Artvoice published an article wherein local individuals answered four questions relating to what they wanted for the year 2017. Petitioner, an elected member of respondent Board of Education for the City of Buffalo Public School District (hereinafter BOE), answered the four questions and made comments about President Barack Obama and Michelle Obama that many considered to be racially offensive. The members of the BOE called a special meeting to address the article and passed a resolution demanding that petitioner resign within 24 hours or the BOE would retain outside legal counsel to file an application to remove him from office. Petitioner did not resign and, at a special meeting held on January 4, 2017, the BOE passed a motion to retain outside counsel to file a removal application.
On January 5, 2017, an article written by petitioner was published in Artvoice in which he discussed the BOE and its collective bargaining negotiations with the Buffalo Teachers Federation (hereinafter BTF). The article stated that, while "in an executive session," the superintendent requested another $10 million in his negotiation with the BTF and that the superintendent "was certain he could get the return of the management prerogatives and even end lifetime health care for new hires, but he had to put the money on the table to avoid a disastrous strike." Outside counsel met with the BOE and advised them that petitioner could not be removed for his comments concerning the Obamas because the comments were protected speech under the First Amendment. However, the disclosure of confidential information from an executive session in the January 5, 2017 Artvoice article was a removable offense and, in a January 18, 2017 meeting, the BOE passed a resolution authorizing the filing of a petition to remove petitioner based on this disclosure.
Thereafter, the BOE filed an application with respondent Commissioner of Education pursuant to Education Law §§ 306 and 2559, seeking an order directing petitioner's removal from the BOE. The application alleged that petitioner disclosed confidential information, obtained from an executive session meeting, concerning the Buffalo City School District's litigation with a former contractor. The application further alleged that petitioner disclosed confidential information in the January 5, 2017 Artvoice article concerning the collective bargaining negotiations with the BTF, as well as a personnel matter with an employee. Following a hearing, the Commissioner sustained the removal application and ordered petitioner's removal from the BOE. In the decision, the Commissioner found that petitioner violated General Municipal Law § 805-a by willfully disclosing confidential information concerning the collective bargaining negotiations. However, the Commissioner also found that the BOE failed to establish that petitioner disclosed confidential information concerning the litigation or personnel matter. Petitioner then commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment challenging the Commissioner's determination to remove him from the BOE, which was transferred to this Court (see CPLR 7804 [g]).
We turn first to two threshold matters, a motion by petitioner seeking to supplement the record and an argument by respondents that the matter is moot. Petitioner's motion requests permission from this Court to supplement the record with the addition of an affidavit in which petitioner avers, among other things, that he is entitled to a $5,000 stipend in the event that he is successful in challenging the Commissioner's determination. Respondents oppose petitioner's motion, arguing, among other things, that it is untimely and improper because the affidavit was not considered by the Commissioner during the administrative proceeding. There is no dispute that the affidavit that petitioner seeks to add to the record was not before the Commissioner. Accordingly, because "[j]udicial review of administrative action must be conducted on the record as it existed before the agency when the determination was made" (Matter of Regional Action Group for Envt. v Zagata, 245 AD2d 798, 801 [1997], lvs denied 91 NY2d 811 [1998]), petitioner's motion to supplement the record is denied.
Turning to the issue of mootness, respondents argue that because petitioner's three-year term on the BOE expired in July 2019 and, as of that date, his term has come to an end, the resolution of this matter has no practical impact and, as such, this Court lacks jurisdiction to hear it. We disagree. The matter is not moot because petitioner may suffer lasting consequences from the Commissioner's determination (see Matter of Veronica P. v Radcliff A., 24 NY3d 668, 671 [2015]; Matter of New York State Commn. on Jud. Conduct v Rubenstein, 23 NY3d 570, 577 [2014]). Specifically, petitioner's reputation and credibility as an attorney are subject to damage because he was removed from a public office for violating the law, namely, willfully disclosing confidential information on a public stage (see General Municipal Law § 805-a [1] [b]). Moreover, the Commissioner's determination of willful disclosure required a finding that petitioner was apprised of the unlawful act of disclosure and disregarded the law. Such a determination can potentially subject petitioner to attorney discipline (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 8.4 [b], [d]) or compromise his reputation as an ethical attorney, which are enduring consequences.
We turn now to petitioner's argument that the Commissioner's determination that he disclosed confidential information is not supported by the record. This Court's review of an administrative decision made as a result of a hearing is limited to whether the decision is supported by substantial evidence (see CPLR 7803 [4]; Matter of Francello v Mendoza, 165 AD3d 1555, 1556 [2018]), "which, in turn, depends upon whether there exists a rational basis in the record as a whole to support the findings upon which the determination is based" (Matter of State of New York v New York State Pub. Empl. Relations Bd., 176 AD3d 1460, 1463 [2019] [internal quotation marks and citations omitted]). As relevant here, pursuant to Education Law § 306 (1), a member of a board of education may be removed from his or her position when he or she has been found guilty of "any wilful violation or neglect of duty . . . after a hearing." A member of a board of education may also be removed pursuant to Education Law § 2559 for "[w]ilful disobedience of any lawful requirement of the [C]ommissioner . . ., or a want of due diligence in obeying such requirement or wilful violation or neglect of duty." Such willful violation may include a disclosure of "confidential information acquired by him [or her] in the course of his [or her] official duties or use [of] such information to further his [or her] personal interests" (General Municipal Law § 805-a [1] [b]). As relevant here, when a public body conducts an executive session, that meeting is not open to the general public and, therefore, disclosure of the information or discussion that occurred during the executive meeting may be prohibited (see Public Officers Law §§ 103, 105). A public body may conduct an executive session only for limited purposes, including "collective negotiations pursuant to article [14] of the [C]ivil [S]ervice [L]aw" (Public Officers Law § 105 [1] [e]).
In the January 5, 2017 Artvoice article, petitioner expressly stated that the information he was relaying was discovered from an executive session. At the administrative hearing, various BOE members who attended the executive session testified that the subject matter in the Artvoice article was the same subject matter that was discussed in executive session, namely, the discussion of negotiation strategies with the BTF. Notably, respondent Barbara Nevergold, President of the BOE, testified that the code of ethics of the BOE prohibits a member from disclosing information from an executive session because the information is confidential. Additionally, Kriner Cash, the Superintendent of the school district, testified that in executive sessions, BOE members are advised that there is attorney-client privilege for all matters that are discussed for the purpose of the executive session. He also stated the BOE had an executive session in October 2016 to discuss the status of the collective bargaining negotiations and that these discussions were intended to be confidential. Thus, the record supports the Commissioner's finding that petitioner disclosed confidential information from the executive session (see CPLR 7803 [4]; Matter of State of New York v New York State Pub. Empl. Relations Bd., 176 AD3d at 1464; compare Matter of Francello v Mendoza, 165 AD3d at 1558).
The record further supports the Commissioner's finding that petitioner's disclosure of confidential information was willful. In making this finding, she relied upon petitioner's testimony in that he was "evasive and demonstrated a lack of regard for his responsibilities as a member of the [BOE]." She also relied upon the BOE's policy and Code of Conduct, which informed BOE members of their duty to refrain from disclosing confidential information. Again, petitioner expressly stated in the January 5, 2017 article that the information he was relaying came from an executive session, and members of the BOE testified that they were informed that information from executive sessions was to remain confidential and that they were apprised of their legal duty to keep such information confidential. The record therefore supports the Commissioner's finding that petitioner was apprised of his obligation to maintain confidentiality and that he intentionally disregarded his legal duty to safeguard the information (see Education Law § 2559; compare People ex rel. Light v Skinner, 37 App Div 44, 46 [1899], affd 159 NY 162 [1899]).
Petitioner contends that the BOE failed to adhere to the procedures required by the Open Meetings Law (see Public Officers Law art 7), which makes the removal application ultra vires and void. Specifically, petitioner alleges that the BOE failed to have a public meeting and vote for authorization to pursue the removal application based upon the disclosure of confidential information. Petitioner's challenge to the authorization of the removal application is not properly before this Court. To commence a proceeding against a public body, a petitioner must submit a CPLR article 78 claim within four months "after the determination to be reviewed becomes final and binding upon the petitioner" (CPLR 217 [1]; see Matter of Stack v City of Glens Falls, 169 AD3d 1220, 1221 [2019]; Keles v Hultin, 144 AD3d 987, 988 [2016]). On January 17, 2017, the BOE held a meeting and authorized the removal application and submitted the petition on January 18, 2017. At that moment, the removal proceeding commenced and became final and binding on petitioner (see CPLR 217 [1]), and petitioner's challenge to the unlawful agency procedure accrued. Petitioner did not submit a CPLR article 78 petition to challenge the alleged unlawful meeting within four months thereof and, thus, he is precluded from arguing it in this matter (see CPLR 217 [1]; Keles v Hultin, 144 AD3d at 988).
Petitioner next contends that the Commissioner erred in interpreting General Municipal Law § 805-a in three respects: first, that the Commissioner's interpretation violated the cannon of antecedent construction; second, that the Commissioner's interpretation of General Municipal Law § 805-a ignores controlling statutory context and that her interpretation renders part of the statute superfluous; and, third, that the Commissioner's interpretation of the word "confidential" is unreasonably broad. We disagree in all respects.
First, the cannon of antecedent construction does not apply to General Municipal Law § 805-a (1) (b), as the statute does not contain a list of qualifying phrases followed by an antecedent (compare Matter of T-Mobile Northeast, LLC v DeBellis, 32 NY3d 594, 608 [2018]; A.J. Temple Marble & Tile v Union Carbide Marble Care, 87 NY2d 574, 580 [1996]). Rather, it contains two distinct qualifying phrases — "disclose confidential information acquired by him [or her] in the course of his [or her] official duties" and "use such information to further his [or her] personal interests" (General Municipal Law § 805-a [1] [b]). Petitioner's suggestion that the latter phrase is the qualifying phrase and the former is the antecedent is contrary to the general rule of statutory construction, which provides that the plain meaning of the statute reflects the legislative intent (see McKinney's Cons Laws of NY, Book 1, Statutes § 94). If the phrase was intended to be as petitioner argues, the Legislature would have used "and" instead of "or" to convey the requirement that any official that discloses confidential information must also do so for the purpose of personal interest. This plain reading negates petitioner's argument that the overall context of General Municipal Law article 18 suggests that one is in violation only if it is proven that the disclosure was done for pecuniary interests and his argument that the Commissioner's interpretation renders General Municipal Law § 806 (1) as superfluous.
Turning to the Commissioner's interpretation of the word "confidential," when interpreting a statute, the "starting point" is the plain meaning of the word in question (People v Owusu, 93 NY2d 398, 401 [1999]). In her decision, the Commissioner rejected petitioner's assertion that the Committee on Open Government's restrictive definition of "confidential" is applicable here, reasoning that, "[w]hile the [L]egislature has provided the Committee on Open Government with the authority to issue advisory opinions regarding the Freedom of Information Law, [the] Open Meetings Law and [the] Personal Privacy Protection Law, the authority to define confidential information within the public school system rests solely with the Commissioner." In defining "confidential," she relied upon precedent and defined it as set forth in a prior decision of the Commissioner as "[i]nformation that is meant to be kept secret" (see 45 Ed Dept Rep 259 [Decision No. 15315], citing Black's Law Dictionary [8th ed 259]). Because the statute does not define confidential, we discern no error in the Commissioner interpreting the word "confidential" with its "usual and commonly understood meaning" (Matter of New York State Bd. of Regents v State Univ. of N.Y., 178 AD3d 11, 20 [2019] [internal quotation marks and citations omitted]), rather than the more restrictive interpretation urged by petitioner.
Petitioner also assails several evidentiary determinations made by the Commissioner. First, petitioner contends that it was error for the Commissioner to refuse to allow testimony concerning what was said during the executive session and that said error improperly limited the scope of petitioner's cross-examination. We disagree. Although the Commissioner limited the scope of petitioner's cross-examination of Nathaniel Kuzman, general counsel to the BOE, and other BOE members, she permitted petitioner to question these witnesses to a limited extent. For example, she ruled that Kuzman could "not be questioned in detail, only generally or topically about what was discussed in the executive sessions [and could not] be asked about what specific legal advice he or another attorney provided." Moreover, petitioner expressly stated in the January 5, 2017 Artvoice article that the information he obtained came from an executive session. Thus, it was within the Commissioner's discretion to determine whether that subject matter of cross-examination was necessary or required (see Matter of Putnam Cos. v Shah, 93 AD3d 1315, 1316 [2012], lv denied 19 NY3d 811 [2012]; Matter of Hildreth v New York State Dept. of Motor Vehs. Appeals Bd., 83 AD3d 838, 841 [2011], lv denied 18 NY3d 804 [2012]).
Petitioner also contends that the Commissioner abused her discretion in rejecting his request to submit affidavits in support of his answer to the removal application after the 20-day limitation. Upon being served, a respondent in a removal proceeding must provide an answer with supporting affidavits within 20 days (see 8 NYCRR 275.13 [a]). In the event that a respondent decides to submit supporting affidavits after the 20-day limitation, the Commissioner has discretion in permitting the submission of affidavits upon a showing of a "good cause" by petitioner (8 NYCRR 276.5). Here, the Commissioner determined that petitioner failed to demonstrate such cause, which was within her discretion to do. Even if we were to find that either of these evidentiary rulings were error, inasmuch as petitioner has failed to demonstrate "that such a ruling renders the entire proceeding fundamentally unfair" (Matter of Cheryl Z. v Carrion, 119 AD3d 1109, 1111 [2014] [internal quotation marks and citation omitted]), we decline petitioner's invitation to annul the determination.
Petitioner also argues that the Commissioner's rejection of his retaliation defense was error. Because the Commissioner's determination that petitioner failed to establish a retaliation defense is supported by substantial evidence, we disagree. To establish a claim of retaliation, the proponent must demonstrate that "(1) [his or her] speech addressed a matter of public concern, (2) [he or she] suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that [his or her] speech was a motivating factor in the determination" (Velez v Levy, 401 F3d 75, 95 [2d Cir 2005] [internal quotation marks and citations omitted]). A respondent may still avoid liability by proving that he or she would have "undertaken the same adverse employment action even in the absence of the protected conduct" (Pekowsky v Yonkers Bd. of Educ., 23 F Supp 3d 269, 276 [SD NY 2014] [internal quotation marks and citation omitted]).
The evidence at the administrative hearing established that petitioner was not subject to "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand" (Phillips v Bowen, 278 F3d 103, 109 [2d Cir 2002] [internal quotation marks and citation omitted]) as a result of his allegedly protected speech. Accordingly, the Commissioner properly determined that petitioner did not suffer an adverse employment action as a result of his protected speech. Rather, the action was a resolution authorizing the hiring of outside counsel for the purpose of filing a removal application, which is not, in and of itself, an adverse employment action (see generally Montero v City of Yonkers, New York, 890 F3d 386, 401 [2d Cir 2018]). Further, the record demonstrates that there was a break in the causal connection between petitioner's speech and the filing of the removal application, namely, the January 5, 2017 Artvoice article. Finally, the record establishes that the BOE would have applied for removal irrespective of petitioner's protected comments.
We are unpersuaded by petitioner's contention that the Commissioner's determination infringes upon his First Amendment right to free speech because his speech involved a matter of public concern and that, although certain matters discussed in executive session may be confidential, the Commissioner's ruling is overbroad.[FN1] To that end, the Commissioner found that, although petitioner's speech was a matter of public concern, this was not a defense to disclosing confidential information from an executive session. The Commissioner stated that petitioner had alternative avenues in reporting the discussions in executive session if he believed there was improper or illegal activity occurring. She reasoned that "to sanction petitioner's behavior would allow each individual school board member to decide what information is confidential, and whether it should be released to the public." We agree.
When a public official speaks on a matter of public concern, that speech is protected under the First Amendment (see Pickering v Board of Ed. of Township High School Dist. 205, Will Cty., 391 US 563, 568 [1968]). "However, the Supreme Court [of the United States] has recognized that the government may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large" (Harman v City of New York, 140 F3d 111, 117 [2d Cir 1998] [internal quotation marks and citation omitted]). When a government imposes a restriction upon a public official's speech that involves a matter of public concern, the court will balance "the interests of the employer in providing effective and efficient public services against the employee's First Amendment right to free expression" (Lewis v Cowen, 165 F3d 154, 162 [2d Cir 1999] [internal quotation marks and citation omitted], cert denied 528 US 823 [1999]). Applying the balancing scale of petitioner's First Amendment rights against the government's need to maintain information as confidential in an executive session, the balance favors the government because a government official does not have a protected interest in releasing information that is statutorily classified as confidential (see Harman v City of New York, 140 F3d at 119; Houton v Fire Dept. City of New York, 47 Misc 3d 1208[A], 2015 NY Slip Op 50519[U], *10 [Sup Ct, Kings County 2015]).
Petitioner also argues that the penalty imposed was "draconian, inconsistent with prior decisions, and shocking to one's sense of fairness." To determine whether an administrative agency abused its discretion in imposing a penalty, courts will assess whether the penalty shocks one's sense of fairness (see Matter of Epelboym v Board of Regents of State of N.Y., 174 AD3d 1182, 1183 [2019]). Here, petitioner failed to provide any evidence that supports his claim that his removal meets this heightened standard. His primary contention is that a prior case of disclosure did not result in removal and that his penalty is disproportionate to his actions. However, the record reflects, and the Commissioner noted, that not only did petitioner willfully disclose confidential information, his testimony showed little regard or remorse for his actions. Accordingly, the penalty of removal was not so disproportionate to the offense as to shock one's sense of fairness and, as such, it will not be disturbed (see Matter of Bolt v New York City Dept. of Educ., 30 NY3d 1065, 1068 [2018]; Matter of Perez v Rhea, 20 NY3d 399, 402 [2013]).
Petitioner's remaining contentions have been reviewed and have been found to be without merit. As a final matter, petitioner's request for declaratory relief is not authorized in a proceeding transferred pursuant to CPLR 7804 (g) and, thus, that part of the matter must be remitted to Supreme Court for the entry of an appropriate judgment thereon (see Matter of Nitti v County of Tioga, 149 AD3d 1332, 1333 [2017]).
Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that motion to supplement the record is denied, without costs.
ADJUDGED that (1) the action for declaratory judgment is severed and said matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision, and (2) the determination is confirmed, without costs, and petition dismissed to that extent.



Footnotes

Footnote 1: Because petitioner raised this First Amendment argument in his posthearing brief, and it was addressed by the Commissioner, this issue is preserved for our review (compare Matter of Veltri v New York State Off. of the State Comptroller, 81 AD3d 1050, 1054 [2011]).